IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | |
| *v.* | Civil cation No. |
| $8,500.00 IN UNITED STATES CURRENCY, | |
| Defendant. | |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW, the United States of America, Plaintiff in the above-styled civil action, pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), and files this verified Complaint for Forfeiture, showing the Court as follows:

### INTRODUCTION

1.

On or around March 26, 2021, agents with the Drug Enforcement Administration ("DEA") seized $8,500.00 in United States currency (the "Defendant Currency") from Brian Keith Moore, Jr. ("Moore") at the Hartfield-Jackson Atlanta International Airport located at 6000 N. Terminal Parkway,

Atlanta, Georgia 30320, a place within the venue and jurisdiction of this Court.

2.

The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1345 and 1355.

3.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1395.

4.

The Defendant Currency is presently within the jurisdiction of this Court and is in the custody of the United States Marshals Service.

**FORFEITURE STATUTES**

5.

Pursuant to 21 U.S.C. § 841(a)(1), except as authorized, it is unlawful for any person to knowingly or intentionally distribute a controlled substance.

6.

Pursuant to 21 U.S.C. § 881(a)(6), all moneys and things of value that were furnished or intended to be furnished in exchange for a controlled substance, that constitute proceeds traceable to such an exchange, or that were used or were intended to be used to facilitate the sale or exchange of a controlled substance in

violation of 21 U.S.C. § 841 are subject to seizure and forfeiture to the United States.

7.

18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

8.

18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

9.

Pursuant to 18 U.S.C. § 981(a)(1)(C), any property which constitutes or was derived from proceeds traceable to a violation of any offense constituting a "specified unlawful activity" is subject to forfeiture to the United States.

**BASIS FOR FORFEITURE**

10.

On or about March 26, 2021, DEA agents were at Hartsfield-Jackson Atlanta International Airport, located at 6000 North Terminal Parkway, Atlanta Georgia, conducting random interdiction on a Spirit Airline flight departing from Atlanta, Georgia to Los Angeles, California.

11.

While DEA was in the process of conducting interdiction with two individuals when agents noticed a third individual sitting in the waiting area who was nervously looking around and paying close attention to what the DEA agents were doing.

12.

The agents noticed that this individual, later identified as Brian Keith Moore, Jr. ("Moore"), had more than one cell phone, which is common for people involved in drug distribution.

13.

The agents saw that Moore hastily picked up his belongings and tried to leave the gate area.

14.

As Moore tried to leave, agents approached him, introduced themselves as DEA agents, and informed him that they were conducting random interdiction stops at the airport.

15.

Agents further informed Moore that they were looking for illegal drugs. Moore denied having any narcotics with him or on his person.

16.

Agents asked Moore if he was carrying large sums of money, to which Moore replied affirmatively.

17.

When asked how much money he was carrying, Moore said that he was carrying less than $10,000. He claimed he had saved this money, that he was a musician, and that he did not want to provide additional details.

18.

Agents asked Moore for a copy of his boarding pass and driver's license.

19.

After Moore inquired about the purpose of requesting the documents, DEA agents explained to Moore that they would conduct records' check while Moore spoke to another agent.

20.

When asked if he had a criminal history, Moore stated that he did not have any criminal history.

21.

When agents asked Moore for his consent to search his bags, Moore replied

that he preferred that they not search his bags.

22.

After agents informed Moore that he had the right to refuse, Moore refused to consent to the search.

23.

Special Agent Erika Williams ("SA Williams") conducted Moore's criminal history check and discovered that Moore was arrested in June of 2011 for felony theft charges, but his case was dismissed. Moore was also arrested in April of 2019 for possession of marijuana for less than one ounce. Moore was sentenced to twelve months' probation. He successfully completed his pretrial diversion for this arrest.

24.

Agent Williams asked Moore why he lied about his criminal history. Moore denied having a criminal history. When asked, he provided SA Williams with the last four digits of his social security number.

25.

After SA Williams confirmed Moore's social security number. Moore then claimed that he had forgotten about the criminal history and that he did not think that it was important.

26.

The agents asked Moore about the purpose of his travel to Los Angeles. Moore advised that he was going to visit his brother and shoot a music video.

27.

Moore stated that his brother's name was Brian Moore, and he was 27 years old.

28.

Agents asked Moore if his brother has the same name as him. Moore advised that he did.

29.

SA Williams asked Moore about his brother' date of birth. This time Moore claimed that his brother is approximately 32 years old.

30.

Moore could not tell the agents in what part of Los Angeles his brother resided. He stated that they have the same father and different mothers.

31.

SA Williams advised Moore that his black duffel bag would be seized, and

a search warrant would be requested.

32.

Moore asked SA Williams if she could promise to let him take his bag and all his contents on the plane if he allowed her to search the bag.

33.

SA Williams stated she could not make any promises because the decision would be made based on what was found in the bag.

34.

Moore told the agents that he had money in the bag which were bundled. Moore then stated that he wanted to give the agents permission to search his bag.

35.

Moore then signed the DEA Form 88, which is a "Consent to Search" form.

36.

While searching Moore's black duffle bag, the agents located an Adidas red fanny pack, which contained United States currency (the "Defendant Currency") wrapped in black hair ties. Bundling money in rubber bands is a common way used by drug dealers to transport large sums of currency.

37.

Moore told the agents that his rapper name was "Black Joker- Hitman Kid" and the purpose of his trip to Los Angeles was to record a song.

38.

However, an online search of Moore's rapper name and music videos did not reveal any results.

39.

Moore stated, among other things, that the music video would cost approximately $3,000, the photo shoot would cost $2,500, and that the remaining $1,500-$2,000 were for shopping.

40.

Moore stated that he used Fort Hood National Banking but did not use online banking.

41.

Moore also stated that he previously served in the Army and was getting paid $1,800.00 per month. He did not want to provide additional details about his military service.

42.

Moore initially stated that his mother and grandmother provided him some of the money for the music video, but later claimed that his aunt, not his mother, gave him the money.

43.

Moore then accessed a Robins Financial Institute bank account online and showed agents that he withdrew $7,500 on January 6, 2021.

44.

The agents inquired about Moore's previous statement about not using online banking and Moore replied that this was his grandmother's bank account.

45.

However, SA Williams saw that the welcome screen read "Welcome Brian" and that there was approximately $1,500 in the account.

46.

After agents asked Moore if he could show that the online bank account belonged to his grandmother, Moore went through the account settings, which, however, did not show any association with his grandmother's name.

47.

Agents placed the Defendant Currency in a self-sealing evidence envelope ("SSEE"). Moore verified the number of the bag and signed the envelope and the DEA Form 12 receipt.

48.

After Moore stated that he planned on getting on the airplane, the agents informed him he was free to go.

49.

Before leaving, Moore asked the agents if he could take a picture of their identification. Agents informed Moore that they were not allowed to let him take pictures of their government Personal Identification Verification ("PIV") cards or credentials.

50.

Soon thereafter, agents brough the sealed envelope to K-9 Bane, who gave a positive alert to the odor of narcotics on the SSEE.

51.

Agents then transported the Defendant Currency, held in the SSEE, to the

DEA Atlanta Field Division Office and eventually turned over to the Defendant Currency to the United States Marshals Office.

52.

On or around June 21, 2021, Moore filed a claim with the DEA, asserting that he is the owner of the Defendant Currency.

53.

The Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or was intended to be furnished in exchange for a controlled substance, that it constitutes proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the sale or exchange of a controlled substance in violation of 21 U.S.C. § 841.

54.

The Defendant Currency is also subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes or was derived from proceeds traceable to a specified unlawful activity, namely the illegal distribution of controlled substances.

WHEREFORE, Plaintiff prays:

(1)     that the Court forfeit the Defendant Currency to the United States of

America;

(2)     that the Court award Plaintiff the costs of this action; and

(3)     that Plaintiff have such other and further relief as the Court deems

just and proper under the facts and circumstances of this case.

This 17th day of September, 2021.

Respectfully submitted,

**KURT R. ERSKINE**
  *Acting United States Attorney*

/s/ Radka T. Nations
**RADKA T. NATIONS**
  *Assistant United States Attorney*
Georgia Bar No. 618248
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
Telephone: (404) 581-6000

13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | |
| *v.* | Civil cation No. |
| $8,500.00 IN UNITED STATES CURRENCY, | |
| Defendant. | |

## **VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Special Agent Erika M. Williams, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 17th day of September, 2021.

*Erika Williams*
_____
SPECIAL AGENT ERIKA M. WILLIAMS
DRUG ENFORCEMENT ADMINISTRATION