IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
GEORGIA ATLANTA DIVISION

UNITED STATES OF AMERICA

PLAINTIFF,

v.

$8,500.00 IN UNITED STATES
CURRENCY,

DEFENDANT.

Civil Action No.

1:21-cv-03847-TWT

## **BRIEF IN SUPPORT OF CLAIMANT'S MOTION TO SUPPRESS**

Claimant, BRIAN KEITH MOORE, JR., by and through his undersigned counsel, pursuant to Rule 7 of the Local Rules for the Northern District of Georgia, files this Brief In Support of Claimant's Motion to Suppress. Claimant is contemporaneously filing a motion to suppress as Plaintiff, the United States of America, through its agents, illegally stopped and detained Claimant, and subsequently illegally searched Claimant's bag and seized his currency, without a warrant, reasonable suspicion, probable cause and/or valid consent in violation of the Fourth Amendment to the United States Constitution.

## INTRODUCTION

This is a forfeiture action regarding $8,500.00 United States Currency pursuant under the Civil Asset Forfeiture Reform Act (CAFRA). Claimant Brian Moore is the lawful owner of the currency at issue and that such currency was illegally and wrongfully seized from Mr. Moore by agents of the Plaintiff United States of America. A motion to suppress is cognizable in a forfeiture action as all actions pursuant to 18 U.S.C. Section 981(b)(2)(B) must comport with the Fourth Amendment to the United States Constitution.

Claimant moves to suppress his identity, any and all statements attributed to him, and any evidence gathered by the DEA agents, as well as the illegal search and seizure of the currency at issue, on the following grounds:

a) The DEA agents did not have reasonable suspicion of criminal activity necessary to justify stopping Claimant at the airport pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);

b) Claimant was subject to a prolonged detention in violation of the Fourth Amendment to the United States Constitution;

c) Claimant's luggage was seized and searched without a warrant, without knowing and voluntary consent, and without any other legal

justification in violation of the Fourth Amendment to the United States Constitution.

## FACTS

On March 26, 2021, Claimant Brian Moore was at Hartsfield-Jackson International Airport for the purpose of flying from Atlanta to Los Angeles. (Moore Aff. ¶ 3).[1] After Mr. Moore passed through the security checkpoints with his carry-on luggage, he sat and waited for his flight in the gate area. (Moore Aff. ¶ 4).

For reasons unbeknownst to Mr. Moore, he was approached by several DEA agents who began interrogating him as to where he was going and the contents of his luggage. (Moore Aff. ¶ 5). Because the three agents were surrounding him, Mr. Moore did not believe that he was free to leave and instead believed he was being detained by the agents. (Moore Aff. ¶ 5). It was clear to Mr. Moore that if he tried to leave, the agents might consider it to be obstruction of their investigation or resisting arrest and that he was not free to leave with the property he needed for the trip. (Moore Aff. ¶ 5).

---

[1] The referenced Affidavit of Claimant Brian Moore is attached hereto as Exhibit 1.

The DEA agents interrogated Mr. Moore about whether his bag contained any drugs or other illegal contraband. Mr. Moore advised the agents that there was nothing illegal in his bag. (Moore Aff. ¶6). The DEA agents further interrogated Mr. Moore about his criminal history, why he was traveling, and what he was going to do when in Los Angeles. The agents' interrogation and questions were made in very aggressive and accusatory tones. (Moore Aff. ¶ 7).

The agents demanded that Mr. Moore tell them whether he was carrying any currency in his bag. Mr. Moore explained to them that he was carrying currency but it was less than $10,000.00 in currency. It was Mr. Moore's understanding that persons are allowed to travel with less than $10,000.00 in cash. (Moore Aff. ¶¶8-9). The DEA agents continued to repeatedly demand that Mr. Moore tell them exactly how much money he had in his luggage. (Moore Aff. ¶10).

The DEA agents then advised Mr. Moore that they wanted to search his bag which Mr. Moore politely declined. At the time, however, Mr. Moore did not believe he had a choice but to stand by while they searched. Mr. Moore was scared that the agents would be mad if he refused or feared that the agents would arrest him for interfering with their investigation. (Moore Aff. ¶11). The agents also told Mr. Moore that they were going to seize his bag and obtain a search warrant if he

did not consent to a search which would definitely cause a long delay and cause him to miss his flight. (Moore Aff. ¶ 12).

Since the DEA agents already said they were seizing his bag regardless of what he said, Mr. Moore stood by while they searched the bag. Mr. Moore did not believe he was free to just leave and was unsure how he could travel without my personal property. As the DEA agents continued to threaten him with further delay, Mr. Moore eventually acquiesced to their apparent authority to seize his bag and search it. (Moore Aff. ¶ 13).

Mr. Moore did not freely and voluntarily consent to a search of his luggage by the agents. While he did sign a form the agents put in front of him stating that he consented to a search of his bag, such a signature was coerced and Mr. Moore did not sign the consent freely and voluntarily. Indeed, Mr. Moore only signed the form because he felt like he had no other choice and that he would not be allowed to leave and take his flight with his luggage if he did not sign. (Moore Aff. ¶¶14-15).

Subsequently, the DEA agents searched Mr. Moore's bag, went through all of his property, and removed $8,500.00 in currency. (Moore Aff. ¶ 16). Upon further interrogation, Mr. Moore advised the agents that he had recently

withdrawn the majority of the cash from a bank account he maintained with his grandmother. In response to their repeated questions, Mr. Moore had to explain several times how his grandmother obtained $10,000.00 on his behalf after selling his deceased grandfather's vehicle to Carmax. (Moore Aff. ¶ 17). Mr. Moore further explained that it was his grandfather's wish that the money received from the sale of his vehicle be given to Mr. Moore. The $10,000.00 check from Carmax was deposited into a joint account held by Mr. Moore and his grandmother, Jacqueline R. Butler, on Mr. Moore's behalf. (Moore Aff. ¶¶ 18-20).

Mr. Moore further explained to the agents that in February of 2021, he withdrew approximately $7,500.00 from the joint account in anticipation of a future trip to Los Angeles, where among other things, he intended to record a music video and do a photo shoot. (Moore Aff. ¶ 21). He advised the agents at the airport that the money would be used primarily to shoot a music video. Mr. Moore even advised the agents of the rap name he records under, which is "Black Joker-Hitman Kid." (Moore Aff. ¶ 22). The agents reacted by insinuating that everything Mr. Moore said was a lie and that he was a drug dealer. (Moore Aff. ¶ 23).

The $8,500.00 in currency that was taken from Mr. Moore by the DEA agents was money he received from a legitimate source, it was intended for a legitimate

purpose, and was not obtained through any illegal activity as I explained to the agents several times. Mr. Moore was not arrested or charged with any crime regarding the money taken from him by the DEA agents nor his travels to Los Angeles on or about March 26, 2021.

## ARGUMENT

As an initial matter, despite being a civil case, a motion to suppress is cognizable in a forfeiture action as all actions pursuant to CAFRA and 18 U.S.C. Section 981(b)(2)(B) must comport with the Fourth Amendment to the United States Constitution.

Generally, as noted in *United States v. Hayes*, 2016 U.S. Dist. LEXIS 149020, *adopted by, motion granted by, United States v. Hayes,* 2016 U.S. Dist. LEXIS 148801 (N.D. Ga. 2016), "the Fourth Amendment of the United States Constitution protects the right of persons to be free from unreasonable searches and seizures." Further, "for a search that is not based on consent to comply with the Fourth Amendment, law enforcement must obtain a warrant supported by probable cause." *See Hayes*, 2016 U.S. Dist. LEXIS 149020 at *12, *quoting United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). When there is a motion to suppress evidence taken "through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." *See*

*id., citing United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (further

citations omitted).

   1. **The DEA agents did not have reasonable suspicion of criminal activity necessary to justify stopping Mr. Moore at the airport pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).**

In *United States v. Broome,* 2005 U.S. Dist. LEXIS 41064 (N.D. Ga. 2005),

*adopted by, objection sustained by, in part, motion denied by, United States v. Broome*,

2006 U.S. Dist. LEXIS 10848 (N.D. Ga. 2006), the Court recognized the following

regarding law enforcement stopping and detaining citizens.

> It is well-settled that agents "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop (and frisk [for safety]) when the [agent] has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 854 L.Ed.2d 605 (1985); *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Franklin,* 323 F.3d 1298, 1301 (11th Cir. 2003). Courts evaluate the reasonableness of such investigative detentions by determining whether the officers' actions were justified at their inception, and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879. An officer is initially justified in conducting an investigative detention when the officer has a reasonable suspicion, grounded in specific, articulable facts, that the citizen is, has been, or is about to be involved in criminal activity. *Terry,* 392 U.S. at 1, 88 S.Ct. at 1868; *United States v. Brignoni-Ponce,* 422 U.S. 873, 881-882, 95 S.Ct. 2574, 2580-2581, 45 L.Ed.2d 607 (1975).

In this case, the DEA agents did not have "a reasonable suspicion, grounded in specific, articulable facts, that . . . [Mr. Moore] . . . [had] been, or [was] about to be involved in criminal activity" when they approached, surrounded, and stopped Mr. Moore. Indeed, Mr. Moore was simply sitting at the gate area waiting to board a flight when the three DEA agents decided to surround him in a way where Mr. Moore felt he was in custody and did not feel he was free to leave. (Moore Aff. ¶¶ 4-5). The agents then began accusing Mr. Moore of being a drug dealer. (Moore Aff. ¶¶ 6-7). The agents continued interrogating Mr. Moore by asking him about his criminal history him and further threatened him with seizing and searching his luggage. (Moore Aff. ¶¶ 6-12). The agents did all of this and procured a custodial stop of Mr. Moore despite there not being one iota of evidence, nor one single specific, articulable fact, to support that Mr. Moore was in any way engaged in illegal activity when the stop occurred.

Clearly the behavior of the DEA agents in randomly approaching someone because they apparently did not like what that person looked like, surrounding that person with three federal agents so that he does not feel free to, and cannot, leave, and then berating him with probing personal questions and accusations of criminal activity with no basis in knowledge or fact, cannot be considered a

"reasonable investigative detention" given there were no articulable facts suggesting Mr. Moore was engaged in criminal activity at the inception of the detention.

Because there was not reasonable suspicion for the DEA agents to approach Mr. Moore, surround him thus placing him in custody where he did not feel he was free to leave, and interrogate him, the DEA agents violated the Fourth Amendment and the principles of *Terry v. Ohio*. Any evidence obtained because of the illegal seizure that resulted from this illegal stop is the fruit of the poisonous tree and should be suppressed. *Wong Sun v. United States*, 371 U.S. 471 (1963). The evidence to be suppressed as a result of this Fourth Amendment violation includes Mr. Moore's identity, any statements or answers to questions attributed to Mr. Moore, any evidence gathered by the agents as a result of the illegal stop, and the seized currency at issue in this action.

> **2. Any and all evidence must be further suppressed as Claimant was subjected to an unreasonable prolonged detention in violation of the Fourth Amendment to the United States Constitution.**

Where the duration of a *Terry* stop is extended beyond the initial reason for the stop, a Fourth Amendment violation occurs if the questioning and

detention is prolonged beyond the reason for the initial stop. *See generally United States v. Purcell*, 236 F.3d 1274, 1279-80 (11th Cir. 2001).

As the initial stop and detention in this matter violated the Fourth Amendment and the principles of *Terry v. Ohio*, it necessarily follows that the continued prolonged detention and questioning of Mr. Moore also violates the Fourth Amendment and is justification for Mr. Moore's identity, all statements or answers given by Mr. Moore, the seized currency, and any other evidence gathered by the agents and must be suppressed.

3. **The warrantless seizure and search of Claimant's bag and the warrantless seizure of the currency at issue without valid, non-coerced, free and voluntary consent violates the Fourth Amendment to the United States Constitution.**

It is undisputed that Claimant's bag was seized and searched without a warrant and without exigent circumstances. Upon information and belief, Plaintiff intends to argue that Claimant gave free and voluntary consent to search his luggage. However, any alleged consent was coerced by the actions and threats of the DEA agents and was therefore not free and voluntary.

A warrantless search does not violate the Fourth Amendment where there is voluntary consent given by a person with authority. *United States v. Benjamin*, 958 F.3d 1124, 1134-35 (11th Cir. 2020), *citing Bates v. Harvey*, 518 F.3d 1233, 1243

(11th Cir. 2008). Consent is voluntary "if it is the product of an 'essentially free and unconstrained choice.'" *Id.* at 1134-35, *quoting United States v. Purcell,* 236 F.3d 1274, 1281 (11th Cir. 2001) (*quoting Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed 2d 854 (1973). "Where consent [is] the basis for a search, the government bears the burden of proving consent was freely given. *Id.* at 1135, *citing Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The government "bears the burden of proving . . . that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily.'" *United States v. Hidalgo*, 7 F.3d 1566, 1571 (11th Cir. 1993) (*quoting United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). Voluntariness is "factual and depends on the totality of the circumstances," and courts must consider "the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found" when evaluating the issue of voluntariness. *Id.* at 1135, *citing United States v. Purcell,* 236 F.3d 1274, 1281 (11th Cir. 2001).

In the instant case, Mr. Moore was sitting at a gate waiting for his flight. For reasons unbeknownst to Mr. Moore, he was approached by several DEA agents

who began interrogating him me as to where he was going and the contents of his luggage. (Moore Aff. ¶¶ 4-5). Because the three agents were surrounding him, Mr. Moore did not believe that he was free to leave and instead believed he was being detained by the agents. (Moore Aff. ¶ 5). It was clear to Mr. Moore that if he tried to leave, the agents might consider it to be obstruction of their investigation or resisting arrest and that he was not free to leave with the property he needed for the trip. (Moore Aff. ¶ 5).

The DEA agents interrogated Mr. Moore about whether his bag contained any drugs or other illegal contraband. Mr. Moore advised the agents that there was nothing illegal in his bag. (Moore Aff. ¶6). The DEA agents further interrogated Mr. Moore about his criminal history, why he was traveling, and what he was going to do when in Los Angeles. The agents' interrogation and questions were made in very aggressive and accusatory tones. (Moore Aff. ¶ 7).

The agents demanded that Mr. Moore tell them whether he was carrying any currency in his bag. Mr. Moore explained to them that he was carrying currency but it was less than $10,000.00 in currency. It was Mr. Moore's understanding that persons are allowed to travel with less than $10,000.00 in cash.

(Moore Aff. ¶ 8). The DEA agents continued to repeatedly demand that Mr. Moore tell them exactly how much money he had in his luggage. (Moore Aff. ¶ 10).

The DEA agents then advised Mr. Moore that they wanted to search his bag. Mr. Moore advised that he did not consent to a search of his bag. The agents then told Mr. Moore that they were going to seize his bag and obtain a search warrant if he did not consent to a search which would definitely cause a long delay and cause him to miss his flight. (Moore Aff. ¶¶ 11-12).

Since the DEA agents already said they were seizing his bag regardless of what he said, Mr. Moore stood by while they searched the bag. Mr. Moore did not believe he was free to just leave and was unsure how he could travel without my personal property. As the DEA agents continued to threaten him with further delay, Mr. Moore eventually acquiesced to their apparent authority to seize his bag and search it. (Moore Aff. ¶ 13).

Mr. Moore did not freely and voluntarily consent to a search of his luggage by the agents. While he did sign a form the agents put in front of him stating that he consented to a search of his bag, such a signature was coerced and Mr. Moore did not sign the consent freely and voluntarily. Indeed, Mr. Moore only signed the form because he felt like he had no other choice and that he would not be allowed

to leave and take his flight with his luggage if he did not sign. (Moore Aff. ¶¶ 13-15).

In *United States v. Momodu*, 909 F.Supp. 1571 (N.D.Ga. 1995), the Court suppressed the findings of the search of an apartment based on factors including that the owner of the apartment initially refused to consent to a search and the officer advised that he would obtain a warrant and search the property. The Court focused on the language used by the officer noting the difference between law enforcement advising that they would apply for a warrant as opposed to the direct statement that they would get a warrant and search. *See Momodu*, 909 F.Supp. at 1579-1581.

The same logic applies in this case. The agents at issue surrounded Mr. Moore and had him in custody. When he refused to initially allow them to search his luggage, he acquiesced after the agents advised they would obtain a search warrant and search his luggage, despite there being no probable cause or reasonable suspicion supporting a search. They did not advise they would "attempt to obtain" or "apply for" a warrant, simply that they would get a warrant and search the bag. Like in *Momodu*, Mr. Moore's subsequent signing of the consent form was not free and voluntary under these circumstances and any

such consent is invalid and violates the Fourth Amendment of the United States Constitution.

As the illegal consent was procured after an initial illegal stop and prolonged detention of Mr. Moore, the illegal consent was obtained in furtherance and exploitation of prior illegal activity by the agents and cannot be considered valid. *See Momodu*, 909 F.Supp. 1581-82, *citing Wong Sun v. United States*, 371 U.S. 471 (1963) and *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).

As such, any evidence found as a result of the illegal search and invalid consent must be suppressed as the fruit of a poisonous tree, including but not limited to the currency at issue in this case.

## CONCLUSION

Based on the foregoing, it is clear that the DEA agents did not have reasonable suspicion of criminal activity necessary to justify stopping Claimant at the airport pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Claimant was further subjected to a prolonged detention in violation of the Fourth Amendment to the United States Constitution. Finally, Claimant's luggage was seized and searched without a warrant, without knowing and

voluntary consent, and without any other legal justification in violation of the Fourth Amendment to the United States Constitution.

As such, all evidence gathered by the DEA agents in this case, including Claimant's identity, any statements made by Claimant, and the currency at issue in this case, must be suppressed.

Respectfully submitted, this 24th day of May, 2022.

By:     /s/ Jason D. Sammis
        Jason D. Sammis
        Sammis Law Firm, P.A.
        Georgia Bar No. 623532
        1005 N. Marion St.
        Tampa, FL 33602
        Email: info@sammislawfirm.com
        Telephone: 813-250-0500

Exhibit "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

PLAINTIFF,

*v.*

$8,500.00 IN UNITED STATES
CURRENCY,

DEFENDANT.

Civil Action No.

1:21-cv-03847-TWT

**AFFIDAVIT OF CLAIMANT, BRIAN KEITH MOORE, JR.**

1. My name is Brian Keith Moore, Jr.

2. I am the Claimant in this matter.

3. On March 26, 2021, I was at Hartsfield-Jackson International Airport for the
   purpose of flying from Atlanta to Los Angeles.

4. After I passed through the security checkpoints with my carry-on luggage, I
   was sitting and waiting for my flight in the gate area.

5. For reasons unbeknownst to me, I was approached by several DEA agents
   who began interrogating me as to where I was going and the contents of my
   luggage. Because the three agents were surrounding me, I did not believe that
   I was free to leave. Instead, I knew that I was being detained by the agents.
   Although the agent eventually said that I could leave without my luggage or
   any receipt, it was clear to me that they intended to detain me, they had

accused me of a crime, and if I tried to leave, they might consider it to be obstruction of their investigation or resisting. Even if I tried to leave, I would not have my property which I needed for the trip.

6. The DEA agents began interrogating me about whether my bag contained any drugs or other illegal contraband. I advised the agents that there was nothing illegal in my bag.

7. The DEA agents began interrogating me about my criminal history, why I was traveling, and what I was going to do when in Los Angeles. I thought I had no choice but to answer their questions since the questions were being made in such an aggressive and accusatory tone while I was being surrounded.

8. The agents demanded that I tell them whether I was carrying any currency in my bag to which I replied that I did have money but that it was less than $10,000.

9. I explained to them that I was carrying less than $10,000.00 in currency because it appeared to me the agents thought I had done something wrong by having some larger amount of money. It was my understanding that I was allowed to travel with less than $10,000.00.

10. The DEA agents continued to demand that I tell them exactly how much money I had, and they continued to ask the same questions over and over.

2

11. When the agents said that they wanted to search my bag, I did not think I had a choice but to stand by while they searched. I was scared that they would be mad if I refused or that they would arrest me for interfering with their investigation since they suspected I had drugs on me or had engaged in some other illegal conduct even though I knew that was not true.

12. The agents also told me they were going to seize my bag and obtain a search warrant if I did not consent to a search which would definitely cause a long delay, cause me to miss my flight, and might have required me to travel to some other location with them.

13. Since they already said they were seizing my bag without a warrant regardless of what I said, I decided to just stand by while they searched the bag. Because I did not believe I was free to just leave, I was unsure how I could travel without my personal property, and they were threatening to further delay me, I acquiesced to their apparent authority to seize my bag and search it.

14. I did not freely and voluntarily consent to a search of my luggage by the agents.

15. I do remember signing a form the agents put in front of me stating that I consented to a search of my bag but I did not sign this freely and voluntarily. I only signed the form because I felt like I had no other choice and that I would not be allowed to leave and take my flight with my luggage if I did not sign.

3

16. Subsequently, the agents searched my bag, went through all of my property, and removed $8,500.00 in currency.

17. I advised the agents that I had recently withdrawn the majority of the cash from a bank account I maintained with my grandmother.

18. After repeated questioning, I had to explain several times how my grandmother obtained $10,000.00 on my behalf after selling my deceased grandfather's vehicle to Carmax.

19. It was my grandfather's wish that the money received from the sale of his vehicle be given to me.

20. The $10,000.00 check from Carmax was deposited into a joint account held by me and my grandmother, Jacqueline R. Butler, on my behalf.

21. In February of 2021, I withdrew approximately $7,500.00 from the joint account in anticipation for a future trip to Los Angeles, where among other things, I intended to record a music video and do a photo shoot.

22. I advised the agents at the airport that the money would be used primarily to shoot a music video. I even advised them of my rap name that I record under, which is "Black Joker-Hitman Kid". My e-mail handle is Hittman Kidd da real black joker.

23. The agents reacted by insinuating that everything I said was a lie and that I was a drug dealer.

24. The $8,500.00 in currency that was taken from me by the DEA agents was money I received from a legitimate source, it was intended for a legitimate purpose, and was not obtained through any illegal activity as I explained to the agents several times.

25. I was not traveling to Los Angeles on March 26, 2021, for any illegal purpose. I was going to shoot a music video (with my half-brother helping to film and direct), do a photo shoot and shop.

26. I was not arrested or charged with any crime regarding the money taken from me by the DEA agents nor my travels to Los Angeles on or about March 26, 2021.

I do swear that the above is true and correct of the best of my knowledge and belief.

Brian Moore Jr
PRINT NAME
05-10-2022
DATED

SIGNATURE

STATE OF Georgia
COUNTY OF Bibb

Sworn to or affirmed and signed before me on 10 May 2022 by Brian Moore , who is _____ personally known to me or who produced Driver License as identification.

Keyonna Jordan
NOTARY PUBLIC or DEPUTY CLERK

Keyonna Jordan
[Print, type, or stamp commissioned name of notary or deputy clerk.]

KEYONNA M JORDAN
MY COMMISSION EXPIRES
APRIL
12
2026
BIBB COUNTY, GA.
NOTARY PUBLIC

5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
GEORGIA ATLANTA DIVISION

UNITED STATES OF AMERICA

PLAINTIFF,

*v.*

$8,500.00 IN UNITED STATES
CURRENCY,

DEFENDANT.

Civil Action No.

1:21-cv-03847-TWT

## CERTIFICATE OF COMPLIANCE

I hereby certify that on May 24, 2022, I prepared the foregoing BRIEF IN

SUPPORT OF CLAIMANT'S MOTION TO SUPPRESS, in compliance with Local

Rule 5.1, N.D.Ga., using Book Antiqua 13-point type.

Respectfully submitted,


/s/ Jason D. Sammis

Jason D. Sammis
Sammis Law Firm, P.A.
Georgia Bar No. 623532
1005 N. Marion St.
Tampa, FL 33602
Email: info@sammislawfirm.com
Telephone: 813-250-0500

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| PLAINTIFF, | Civil Action No. |
| v. | 1:21-cv-03847-TWT |
| $8,500.00 IN UNITED STATES CURRENCY, | |
| DEFENDANT. | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2022, I electronically filed the foregoing

BRIEF IN SUPPORT OF CLAIMANT'S MOTION TO SUPPRESS with the Clerk

of Court using the Court's CM/ECF system, which will automatically send

notification of such filing to the following attorneys of record:

> Radka T. Nations
> 75 Ted Turner Dr., S.W.
> Atlanta, GA 3030
> Radka.Nations2@usdoj.gov

> Respectfully submitted,

> /s/ Jason D. Sammis
> Jason D. Sammis
> Sammis Law Firm, P.A.

Georgia Bar No. 623532
1005 N. Marion St.
Tampa, FL 33602
Email: [info@sammislawfirm.com](mailto:info@sammislawfirm.com)
Telephone: 813-250-0500