IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| PLAINTIFF, | Civil Action No. |
| *v.* | 1:21-cv-03847-TWT |
| $8,500.00 IN UNITED STATES CURRENCY, | |
| DEFENDANT. | |

**CLAIMANT'S MOTION FOR ATTORNEY FEES, COSTS AND INTEREST**

Pursuant to Federal Rule of Civil Procedure 54, N.D. Ga. Local Rule 54.2, 28 U.S.C. §2465(b)(1)(A) of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), and Rule 41(a)(2) of the Federal Rules of Civil Procedure. Claimant, Brian Moore (hereinafter "Mr. Moore" or "Claimant"), through undersigned counsel, hereby moves for an order directing the Plaintiff, the United States (the "Government"), to pay Mr. Moore's reasonable attorney fees and in the sum of $15,200.00 (38 hours at $400 an hour) and for interest to be determined by the Court.

## INTRODUCTION

The Civil Asset Forfeiture Reform Act (CAFRA) provides that in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant. 28 U.S.C.S. § 2465(b)(1)(A).

A court order dismissing the complaint with prejudice under Rule 41(a)(2) sufficiently alters the legal relationship between the parties and contains the "necessary judicial imprimatur" to establish that Mr. Moore is a prevailing party to this action. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001); *see also United States v. Certain Real Property*, 543 F. Supp. 2d 1291 (N.D. Ala. 2008) (distinguishing between dismissal with or without prejudice and citing *Buckhannon* as the governing authority for the definition of "substantially prevails" as it is used in 28 U.S.C. §2465(b)(1)).

Mr. Moore "substantially prevailed" on September 9, 2022, when the Court entered an order dismissing with prejudice the Government's complaint against the $8,500.00 in U.S. Currency that was the subject of this case. Accordingly, under the mandatory provisions of CAFRA, Mr. Moore is entitled to reasonable

attorney fees and costs. Additionally, the Court has discretionary authority to award fees in connection with voluntary dismissal pursuant to Rule 41(a)(2).

Mr. Moore respectfully requests that the Court awarded attorney fees and costs in the total amount of $15,200.00, reflected in the Affidavit of Attorney Fees and Costs attached hereto as EXHIBIT 1 and incorporated herein by reference.

Pursuant to 28 U.S.C. § 2465(b)(1)(C)(ii), Mr. Moore also seeks pre-judgment interest on the principal seized amount of $8,500.00. This amount is calculated pursuant to said code section commencing on April 10, 2021, a date fifteen days subsequent to the date the United States seized the cash property, and ending September 9, 2022, the date of this Court's Order (judgment), and based upon the 30-day Treasury note rates which rates is respectfully requested the Court take judicial notice of. Pursuant to 28 U.S.C. §2465(b)(1)(B), Claimant also seeks post-judgment interest.

It is respectfully requested that the amounts to be returned and to be awarded be paid via a check from the United States payable to the order of Claimant and Claimant's counsel and delivered to the following address: Sammis Law Firm, P.A., 1005 N. Marion St., Tampa, FL 33602.

## BACKGROUND FACTS

On March 26, 2021, law enforcement officers with the Drug Enforcement Administration ("DEA") without a warrant, seized $8,500.00 in United States currency ("Defendant $8,500.00") from Mr. Moore while he was waiting to board a domestic flight at the Hartsfield Jackson Atlanta International Airport located at 6000 N. Terminal Parkway, Atlanta, Georgia.

After the seizure, the DEA served Mr. Moore with a personal notice of seizure through certified mail which gave him 35 days to file a claim for court action. On or about June 21, 2021, Mr. Moore properly filed a timely verified claim with the DEA verifying that he is the owner of the Defendant Currency and demanding court action to contest the seizure and forfeiture.

On September 17, 2021, the Government, by and through its agents, filed a Complaint for Forfeiture against the $8,500.00 in United States currency ("Defendant $8,500.00.") (Doc. 1 on the Docket). The Complaint included allegations that the Defendant $8,500.00 was subject to forfeiture to the Government pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), on the grounds that the Defendant Currency allegedly constituted or was derived from proceeds traceable to illegal distribution of controlled substances. (Doc. 1).

The United States Marshals Service arrested the Defendant $8,500.00 on September 30, 2021. (Doc. 4). On or around October 4, 2021, the United States served direct notice of the forfeiture action and a copy of the Complaint for Forfeiture on Mr. Moore. (Doc. 3).

Mr. Moore alleged an ownership interest in the Defendant $8,500.00 by virtue of the Verified Claim of Interest filed on November 5, 2021 (Docs. 5 and 7) and Answer to Complaint with affirmative defenses, filed on November 5, 2021 (Doc. 6).

Even though a relatively small amount of U.S. Currency was seized, the Government served interrogatories and a request for production concerning Mr. Moore's financial history going back several years. For example, on March 31, 2022, the government propounded ten (10) interrogatories on Brian Moore and a request for production of eight (8) categories documents that included:

    a.  his state and federal tax returns for 2021, 2020, 2019, and 2018, including all schedules, 1099s, W-2s, and other attachments thereto;

    b.  all records or documents evidencing, constituting, or referring to any and all sources of income he received from January 1, 2018, to December 31, 2021, including, but not limited to, contracts for

employment, check or pay stubs from any employer, tax-free investments, and gambling winnings or losses.

c. all documents relating to any interest he had in any security account, stock, pension plan, retirement fund, profit sharing plan, disability plan, or any other deferred compensation plan, including all papers showing monthly deposits and account balances.

Thereafter, Claimant provided objections and responses to the Plaintiff's interrogatories and request for production. What is more, Plaintiff served several third-party subpoenas for Mr. Moore's financial records over the past several years even though Mr. Moore had already provided a detailed explanation of the source of the funds to the agents at the time of the seizure.

On May 24, 2022, the Claimant filed a Motion to Suppress alleging that the initial detention was illegal, the detention was unreasonably prolonged, and the warrantless seizure was not supported by free and voluntary consent or any other legal basis as required by the Fourth Amendment of the United States Constitution. (Doc. 22). The Government opposed the motion. (Doc. 23). The Court scheduled an evidentiary hearing on Claimant's Motion to Suppress, which was scheduled for September 12, 2022.

On July 29, 2022, the Government filed an Emergency Motion for Extension of Time to Complete Discovery for the Limited Purpose of Taking the Deposition of Third-Party Witness Jacquline R. Butler (Doc. 26). On August 1, 2022, the Claimant filed a response in opposition to the Government's Emergency Motion for Extension of Time to Complete Discovery for the Limited Purpose of Taking the Deposition of Third-Party Witness Jacquline R. Butler (Doc. 27). On August 22, 2022, the Court entered an order denying the Government's Emergency Motion for Extension of Time to Complete Discovery for the reasons set forth in the Claimant's Response (Doc 28).

On September 2, 2022, Mr. Moore filed a motion for summary judgment on the issue of probable cause and requested a court order to return the seized property (Doc. 29).

On September 7, 2022, less than three (3) full business days prior to the scheduled motion to suppress hearing, and while Mr. Moore's Motion for Summary Judgment was pending, the Government filed a Motion to Voluntarily Dismiss the Complaint with Prejudice (Doc. 30) which provided:

> "…the United States asserts it will not be in the public interest to pursue this action and seeks voluntary dismissal of this action…The dismissal of this action is proper since, among other things, Claimant will not be

prejudiced by the dismissal of this action because the United States is
requesting that this action be dismissed with prejudice and, consequently,
the Claimant would face no risk of subsequent litigation over the same
issues. In addition, the dismissal of this action is in the interest of judicial
economy, prevents the incurrence of additional attorney's fees and
litigation expenses for which the United States may be liable, and
conserves resources. Lastly, the dismissal of this action will result in the
return of the Defendant Currency to Claimant, which is the relief sought
by Claimant."

(Doc 30 at 2).

On September 9, 2022, the Court granted the United States' Motion to
Voluntarily Dismiss Complaint with Prejudice [Doc. 30].

## LEGAL ARGUMENT

I. **MR. MOORE IS STATUTORILY ENTITLED TO ATTORNEY'S FEES
AND COSTS PURSUANT TO 28 U.S.C. § 2465(b)(1)(A)**

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") provides that in

"any civil proceeding to forfeit property under any provision of Federal law in

which the claimant substantially prevails, the United States shall be liable for

reasonable attorney fees and other litigation costs reasonably incurred by the

claimant." 28 U.S.C. § 2465(b)(1)(A). Thus, Section 2465 provides for the

mandatory award of attorneys' fees and other litigation costs to non-government parties who substantially prevail in a civil forfeiture proceeding.

Congress enacted CAFRA in response to public perception that the Government was over-reaching in civil and criminal forfeiture proceedings. *See U.S. v. Khan*, 497 F.3d 204, 208 (2d Cir. 2007); *U.S. v. One Lincoln Navigator*, 328 F.3d 1011, 1012 (8th Cir. 2003) (stating that CAFRA was enacted "to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures"). Congress sought to address the "public outcry over the government's too-zealous pursuit of civil and criminal forfeiture." *Khan*, 497 F.3d at 208 (2d Cir. 2007). Congress fulfilled that objective by providing for an award of attorney's fees to litigants who "substantially prevail" in their attempts to regain possession of wrongfully seized property. *See* 28 U.S.C. § 2465(b)(1)(A).

## II. COUNSEL'S RATES AND THE NUMBER OF HOURS EXPENDED ARE REASONABLE.

### A. The Lodestar Analysis Applies.

The Eleventh Circuit has adopted the lodestar approach in determining an award of attorney's fees. *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d

1292, 1298-1302 (11th Cir. 1988). To establish a lodestar amount, the court must ascertain the number of hours an attorney reasonably expended on the litigation and multiply that figure by a reasonable hourly rate. *Id.* at 1302. The party seeking fees "is responsible for submitting satisfactory evidence to establish both that the requested rate is in accord with the prevailing market rate and that the hours are reasonable." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. "The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303.

Mr. Moore has submitted billing rates of $400 per hour for Jason Sammis, Claimant's counsel. Mr. Moore supports these rates with an affidavit from Jason Sammis, Esq., an experienced attorney with 23 years of experience, including 10 years of experience focused on civil cases and 13 years of experience in criminal defense and related matters including forfeiture cases.

**B. Counsel's Lodestar Comports with the Listed Factors**

Where fees are called for by statute, the Court must first calculate the "lodestar" amount, an initial estimate of a reasonable attorney's fee, by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S. Ct. 939, 103 L. Ed. 2d 67(1989). The Court then considers adjusting this amount by reference to various factors. *See Blanchard*, 489 U.S. at 94. "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010). The Court must consider factors such as:

1. time and labor required;

2. novelty and difficulty of the questions involved;

3. skill requisite to perform the legal services;

4. likelihood that this representation precluded the attorney from taking other work;

5. fee customarily charged in the community for similar work;

6. amount at stake and result achieved;

7. time limitations imposed by client or circumstances;

8. nature and length of the professional relationship;

9. experience, reputation, and ability of the lawyer;

10. fee arrangement between the attorney and client;

11. the undesirability of the case; and

12. awards in similar cases.

*See Johnson*, 488 F.2d at 717-19.

### 1. Time and Labor Required

Mr. Moore's requests an award of attorneys' fees at a rate of $400 an hour is consistent with the prevailing rates for attorneys practicing in this area of the law in Georgia. As more fully discussed herein, Claimant counsel's rate and the requested fee and expense reimbursement are reasonable and, thus, should be approved.

All of the hours expended by Claimant's Counsel in this litigation which has spanned more than a year were reasonable and were a result of the case being actively pursued by the Government. Counsel has expended an enormous

amount of time and effort in litigating the case and achieving an excellent result for Mr. Moore considering that all of the seized funds must be returned.

The number of hours expended on this matter, as documented in the detailed time records submitted with the Affidavit (See Exhibit 1), were reasonable and necessary for this case. As described in the Itemized Statement of Time, much of the cost associated with this litigation was driven by the Government's litigation decisions. Accordingly, there is no basis to reduce the amount of the full hourly fees in this matter.

As elaborated herein, this matter involved extensive investigation and complex issues of forfeiture and search and seizure law, necessitating the application of significant attorney resources. In addition, "[a]s we all well know, legal issues are rarely clear-cut; but even where they are relatively clear, it can still be difficult and time consuming to be forced to argue the point." *Sheppard v. Conway*, No. CIV.A. 3:14- 25039, 2015 WL 1528788, at *3 (S.D.W. Va. Apr. 3, 2015). And, here, Government counsel always forced Mr. Moore to argue every point. Throughout this litigation, the parties have engaged in vigorous motions practice.

## 2. The difficulty and novelty of the issues.

Asset forfeiture is a complex area of federal civil law which is a practice specialty that involves one of the most esoteric mixtures of law and procedure. The civil and administrative forfeiture processes impose complex legal obstacles, onerous deadlines and rarely used federal Admiralty rules. This particular case was complex, implicating a wide-range of legal issues including Fourth Amendment issues, asset forfeiture issues, standing issues, Florida law issues, CAFRA issues, and K9 Handling issues. Claimant's counsel submits that the defense of the baseless allegations made by the Government "was not at all obvious and would not have been apparent to less experienced counsel." *Savaniv. URS Professional Solutions LLC*, No. 1:06-CV-02805-JMC, 2014 WL 172503, at *4 (D.S.C. Jan. 15, 2014).

## 3. The necessary legal skill required.

Claimant's Counsel has extensive experience as a criminal defense attorney including handling forfeiture cases and was accordingly able to adeptly navigate the issues presented by this case, reviewed all of the documents and

financial records, and applied specialized expertise, forcing the Government to dismiss the case.

### 4. The attorneys' opportunity costs in pressing the instant litigation.

Claimant Counsel manages a busy practice with one other partner and three associates. Thus, he must exercise utmost discretion before taking on a matter, knowing that it will require expending significant energy and scarce resources. Here, the attention required to diligently and properly litigate these issues required Claimant's Counsel to forego profitable work over the past year. A significant risk of non-payment exists in these types of cases despite devoting substantial resources in terms of time and costs advanced.

### 5. The customary fee.

Determination of a reasonable hourly rate guided by what attorneys earn from paying clients for similar services in similar circumstances. Reasonable hourly rates are determined by reference to the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. In assessing a reasonable hourly rate, courts consider

"the prevailing rates in the community for similar services by lawyers with comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Therefore, Claimant's Counsel hourly rate should be compared to prevailing rates in Georgia for counsel experienced in forfeiture law, suppression issues under the Fourth Amendment litigation, and criminal litigation.

Claimant's Counsel has set forth his customary hourly rate and the number of hours expended in this matter in great detail in the Exhibit 1. As demonstrated and attested to in the Declaration, the hourly rate charged by Claimant's Counsel reflects his extensive experience particularly in the area of asset forfeiture and litigation. His rate also corresponds to rates charged by attorneys of comparable background and reputation providing similar services. (See Exhibit 1).

Here, Claimant Counsel has calculated the lodestar using his standard hourly rate which is comparable and actually lower than attorneys performing comparable work in Georgia, even though this case required specialized expertise in forfeiture. Counsel has used a $400 attorney rate. These rates are consistent with those for asset forfeiture attorneys and this area.

Similar rates in comparably complex cases have been approved by courts in this District, as well as by courts in other districts with similar market-rates. Courts throughout the country have upheld similar rates in analogous cases. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 325 (W.D.Tex.2007) (finding reasonable hourly rates of between $500 and $550 for lead counsel); *GAKM Resources LLC v. Jaylyn Sales Inc.*, No. 08 Civ. 6030, 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) (finding reasonable rates of up to $650 for partners and $195 for a paralegal in intellectual property litigation); *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139, 2009 WL 935674, at *5-6 (S.D.N.Y. Apr. 7, 2009) (finding rates of $650 per hour for a partner and $200 per hour for a paralegal were "perfectly reasonable" in intellectual property litigation); *Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC,* No. 05 Civ. 6757, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009) (paralegal rates of $235, $220, and $205 per hour reasonable in intellectual property litigation); *Phoenix Four, Inc. v. Strategic Res. Corp*, No. 05 Civ. 4837, 2006 WL 2135798, at *2 (S.D.N.Y. Aug. 1, 2006) (rates of $600 per hour for a commercial litigation partner, $440 per hour for a senior associate, $325 per hour for a junior associate, $295 per hour for a first-year associate, and $195 per hour for a paralegal were reasonable). *See also Rozell v. Ross-Hoist*, 576 F. Supp. 2d 527,

546 (S.D.N.Y. 2008) (finding reasonable rates of $600 per hour for a partner, $350 for a senior associate, $250 for a junior associate, and $175 per hour for paralegals for work performed in 2006 and 2007 in a single plaintiff sexual harassment suit). Accordingly, the hourly rate of Claimant's Counsel accurately reflects the complexity and difficulty of the case and is well within the customary hourly rates charged in this jurisdiction and throughout the country.

The professional standing and expertise of opposing counsel are also important factors in evaluating the quality of services rendered by Claimant's Counsel and "should be weighed in determining the fee, because such standing reflects the challenge faced by Claimant's attorneys." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005). AUSA Radka Nations is an experienced federal prosecutor in the Asset Forfeiture Unit with considerable litigation experience. Moreover, the Department of Justice is the largest law firm in the world which contains a wealth of experience and vast resources. Thus, this litigation "was not conducted against mediocre adversaries." *See In re King Resources Co. Securities Litigation*, 420 F. Supp. 610, 634 (D. Colo. 1976). That Claimant Counsel ultimately obtained a result of dismissal

despite formidable legal opposition, further confirms the high quality of the representation and supports the reasonableness of the requested fee award.

### 6.  The "undesirability" of the case.

Civil forfeiture cases often carry with them elevated risks, a requirement of lengthy investigation through discovery, and a possibility of no recovery, all of which speak to the undesirability of such a case. In addition , "[m]aking this case difficult and to some extent undesirable are the facts that it is: (1) a time-eater; (2) a tough case where fee collection, if any, promises to be long-delayed; (3) a case destined to be litigated in federal court, which is a forum some lawyers choose to avoid; and (4) a case that, predictably, will draw to it sophisticated, well-funded defense counsel ready, willing and able to assert every conceivable argument on their client's behalf; and (5) a money-pit when it comes to advanced costs which now total approximately $895,000." *In re Dell Inc.,* No. 06-CV-726-SS, 2010 WL 2371834, at * 19 (W.D. Tex. June 11, 2010). Here, the complexity of forfeiture litigation and the uncertainty of contingency based work verify the reasonableness of the Claimant's fee request.

## 7. Awards in similar cases.

The requested fee award is fair, reasonable, and appropriate under Georgia law and when compared to other fee awards granted in similar forfeiture cases based upon a lodestar analyses. Courts have awarded significant fees in similar forfeiture cases, including: *See U.S. v. 4,432 Mastercases of Cigarettes*, 322 F.Supp.2d 1075 (C.D. Cal. 2004)(approved nearly $500,000 in fees pursuant to §2465(b)(1)(A)); *U.S. v. $60,201.00 U.S. Currency*, 291 F.Supp.2d 1126 (C.D. Cal. 2003)(approximately $60,000 in fees awarded); *U.S. v. $193,680.00 U.S. Currency*, CV 01-9676-CBM (Mcx)(over $125,000 in fees awarded); *U.S. v. $215,271.00 et al*, No. CV 01-9812-DDP (nearly $80,000 in fees awarded); and *United States v. One Rolex 18K Gold Watch With Light Brown Crocodile Style Wrist Band,* 696 F.Supp.2d 143 (D. Puerto Rico 2010) (awarding $6,842.25 in attorney's fees).

Here Claimant's Counsel's aggregate lodestar of $400 per hour amply supports its request of $16,500 in attorneys' fees. It is clear, then, when looking at the totality of the factors that the "value of the work put in by Claimant's Counsel on this case exceeds the fee sought under every measure." *Savani v. URS*

*Professional Solutions, LLC*, No. 1:06-CV-02805-JMC, 2014 WL 172503, at *9 (D.S.C.

Jan.15, 2014).

### III. INTEREST

As a result of the fact that Mr. Moore "substantially prevailed," he is

entitled to an award of the interest paid to the United States from the date the

funds were seized on March 26, 2021, pursuant to 28 U.S.C. § 2465(b)(1)(C)(i). Mr.

Moore also seeks an award of imputed interest pursuant to 28 U.S.C. §

2465(b)(1)(C)(ii), for any non-excluded time period during which interest was not

paid on the funds. The statute provides:

> United States shall be liable for- - in cases involving currency, …

> (i) interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest-bearing account or instrument; and

> (ii) an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid (not including any period when the property reasonably was in use as evidence in an official proceeding or in conducting scientific tests for the purpose of collecting evidence), commencing 15 days after the property was seized by a Federal law enforcement agency, or was turned over to a Federal law enforcement agency by a State or local law enforcement agency."

28 U.S.C. § 2465(b)(1)(C).

## CONCLUSION

WHEREFORE, Claimant requests that the Court enter an award of attorney's fees under CAFRA in the amount of $15,200, award prejudgment and post judgement interest in an amount to be determined by the Court based on the guidelines as set forth in Title 28, Section 1961, and provide such further relief as the Court deems just and proper.

Respectfully submitted, this 21st day of September, 2022.

By:   /s/ Jason D. Sammis
Jason D. Sammis
Georgia Bar No. 623532
Sammis Law Firm, P.A.
1005 N. Marion St.
Tampa, FL 33602
Email: info@sammislawfirm.com
Telephone: 813-250-0500
*Attorney for Claimant*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that on September 21, 2022, I prepared the forgoing CLAIMANT'S MOTION FOR ATTORNEY FEES, COSTS AND INTEREST, in compliance with Local Rule 5.1, N.D.Ga., using Book Antiqua 13-point type, and have this day electronically filed the document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

/s/ Jason D. Sammis
Jason D. Sammis
*Attorney for Claimant*

**CERTIFICATE OF SERVICE**

I hereby certify that I served CLAIMANT'S MOTION FOR ATTORNEY FEES, COSTS AND INTEREST upon Plaintiff by using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

This 21 day of September 2022.

/s/ Jason D. Sammis
Jason D. Sammis
*Attorney for Claimant*