IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    PLAINTIFF,<br><br>        v.<br><br>$8,500.00 IN UNITED STATES<br>CURRENCY,<br>    DEFENDANT | Civil Action No<br><br>1:21-cv-3847-TWT |

**Plaintiff United States' Response to
Claimant's Motion for Attorney's Fees, Costs, and Interest**

NOW COMES, Plaintiff, the United States of America, by Ryan K. Buchanan, United States Attorney, and Radka T. Nations, Assistant United States Attorney for the Northern District of Georgia, and files its Response to Claimant's Motion for Attorney Fees, Costs, and Interest. [Doc. 34].

I. **Relevant Factual Background and Procedural History**

This is a civil forfeiture action arising under Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Section 981(a)(1)(C). On or around March 26, 2021, agents with the Drug Enforcement Administration ("DEA") seized $8,500.00 in United States currency ("Defendant Currency") from Brian Keith Moore, Jr. at the Hartfield-Jackson Atlanta International Airport located at 6000 N. Terminal Parkway, Atlanta, Georgia 30320, a place within the

venue and jurisdiction of this Court. On September 17, 2021, the United States filed a Verified Complaint for Forfeiture against the Defendant Currency pursuant to Title 21, United States Code, Section 881(a)(6) on the grounds that it was furnished or was intended to be furnished in exchange for a controlled substance, that it constituted proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the sale or exchange of a controlled substance in violation of Title 21, United States Code, Section 841 and pursuant to Title 18, United States Code, Section 981(a)(1)(C), because it constituted or was derived from proceeds traceable to a specified unlawful activity, namely the illegal distribution of controlled substances. [Doc. 1].

On or about June 21, 2021, Brian Moore, Jr. ("Claimant"), by and through counsel, filed a Verified Claim to the Defendant Currency and an Answer to the Verified Complaint. [Docs. 5-7]. Thereafter, Plaintiff spoke with Claimant's counsel, Leslie Sammis, and inquired whether Claimant would be interested in a pre-discovery resolution of the matter. Claimant's counsel advised that the only resolution Claimant would be amenable to was for the United States to dismiss the Complaint and pay attorney fees. A couple of weeks later Jason Sammis, also counsel for Claimant, reached out to Plaintiff. The United States once again asked whether Claimant would be interested in a pre-discovery resolution of this

matter and received the same response as before. The United States then propounded discovery requests to obtain bank records related to the Defendant Currency. [Docs. 9-12]. The Claimant in return sent discovery requests to the United States. [Doc. 13]. On April 4, 2022, the parties jointly moved the Court to enlarge the discovery period for an additional 120 days. The Court granted the parties' motion and extended the discovery deadline until August 3, 2022. [Docs. 19-20].

On May 10, 2022, Claimant moved this Court for leave to file his Motion to Suppress after the deadline to do so had passed. [Doc. 17] The Court granted Claimant's motion. [Doc. 21]. On May 24, 2022, Claimant filed his Motion to Suppress. [Doc. 22] The United States opposed the motion. [Doc. 23]. The Court scheduled an evidentiary hearing on Claimant's Motion to Suppress for September 12, 2022.

On July 27, 2022, the United States had another conversation with Claimant's counsel Jason Sammis, during which the United States inquired about whether Claimant would consider resolving this matter before the suppression hearing. Specifically, the United States stated that it would consider returning $7,500.00 to Claimant after deposing Claimant's grandmother. Two days later, Claimant declined United States' offer and extended a counteroffer. Specifically,

3

Claimant offered that the United States could return the Defendant Currency and pay $3,400.00 in attorney fees. Then the United States moved the Court to extend the discovery period to depose Claimant's grandmother who, according to the Claimant, gave him the Defendant Currency. Claimant opposed. [Doc. 27]. The Court denied United States' motion. [Doc. 28].

On August 29, 2022, the United States had another conversation with Claimant's counsel Leslie Sammis and offered to resolve the matter by returning $7,500.00 to Claimant. Two days later, Claimant declined the offer and extended a counteroffer. Specifically, Claimant offered that the United States return the Defendant Currency and pay $4,500.00 in attorney fees. On September 2, 2022, Claimant filed his Motion for Summary Judgment. [Doc. 30]. On September 7, 2022, the United States, for a variety of reasons, including the resources and cost associated with a suppression hearing, determined that it was no longer in the public interest to pursue this matter. The United States voluntarily moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 41(a)(2). [Doc. 30]. The following day, the Claimant filed his Response with Qualified Objections. [Doc. 31]. On September 9, 2022, this Court granted United States' motion and dismissed the case. [Doc. 32].

Three days later, in order to facilitate this resolution, the United States

reached out to Claimant's counsel and requested that he completes the standard United States Marshal Service Automated Clearing House ("ACH") form, which is required for the United States to pay Claimant. That form, which the government utilizes in connection with settlement payments, requests information about the payee and the financial institution to which the payment is to be sent. Here, on September 13, 2022, Claimant's counsel refused to complete the standardized from, stating that she was not required to complete the ACH form because the parties did not reach an agreement. Instead, Claimant's counsel requested that she receive payment via paper check, without completing the ACH form. During a telephone conversation the next day, Claimant's counsel expressed a concern that by completing the ACH form, United States' payment to Claimant would be subject to the Treasury Offset Program ("TOP"). In her view, completing the ACH form was only required when parties reach an agreement, not when the government dismisses a case. A few days later, the undersigned emailed Claimant's counsel the statutory support requiring that all payments by the United States are subject to the Treasury Offset Program, including when the government voluntarily dismisses a case. Therefore, completing the ACH form is required, regardless of whether Claimant requests electronic or check payment. Claimant never responded, the ACH form has not

been completed, and the United States has not been able to pay Claimant.

On September 21, 2022, Claimant filed the instant Motion for Attorney Fees, Costs and Interest. [Doc. 34]. The United States now responds.

## II. Legal Argument and Citation of Authority
### a. Calculating the Amount of Attorney Fees

Title 28, United States Code, Section 2645(b) governs the award of attorney fees, litigation costs, and interest in civil forfeiture actions, providing in relevant part that when the United States dismisses a case with prejudice, claimant is entitled to:

(A) reasonable attorney fees and other litigation costs reasonably incurred by the claimant;
(B) post-judgment interest, as set forth in section 1961 of this title; and
(C) in cases involving currency. . . —
  (i) interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest-bearing account or instrument; and
  (ii) an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid . . . commencing 15 days after the property was seized by a Federal law enforcement agency, or was turned over to a Federal law enforcement agency by a State or local law enforcement agency.

28 U.S.C. § 2465(b)(1)(A).

"A determination of a reasonable attorney's fees is a question of fact." *United States v. $80,891.25 in U.S. Currency*, No. 4:11-CV-183, 2012 WL 170155, at *1 (S.D.

Ga. Jan. 19, 2012). This determination is within the Court's discretion and will only be overturned if the Court abuses its discretion. *See Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 716–17 (5th Cir.1974), overruled on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

The "lodestar" approach is the principal method used to determine reasonable attorney fees under Title 28, United States Code, Section 2465. *Blanchard v. Bergeron*, 489 U.S. at 94; *United States v. Fifty-Nine Thousand Dollars ($59,000.00) in U.S. Currency*, 2010 WL 3212002, at *4 (S.D. Fla. Aug. 12, 2010). The calculation of the lodestar figure consists of multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Blanchard*, 489 U.S. at 94.

After calculating the lodestar figure, the Court is authorized to adjust the amount on the basis of the following factors:

- the time and labor required;
- the novelty and difficulty of the question;
- the requisite skill in providing the legal service;
- the preclusion of other employment by the attorney due to acceptance of the case;
- the customary fee;
- whether the fee is fixed or contingent;

- time limitations imposed by the client or the circumstances;

- the amount involved and the result obtained;

- the experience, reputation, and ability of the attorneys;

- the "undesirability" of the case;

- the nature and length of the professional relationship with the client; and

- awards in similar cases.

*See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Hensley v. Eckerhart*, 461 U.S. at 429-30 n.3 (1983); *Blanchard v. Bergeron*, 489 U.S. 87, at 92 n.6 (1989) (citing legislative history) (reasonable fees are adequate to attract competent counsel, but do not produce windfalls to attorneys).

### b. Determining the Prevailing Hourly Rate

Here, Claimant requests an award of attorneys' fees at a rate of $400 an hour, which he submits is "actually lower than attorneys performing comparable work in Georgia" (Doc. 34, p. 16) and is "consistent with the prevailing rates for attorneys practicing in this area of the law in Georgia." *Id.*

The burden is on Claimant to establish that $400 an hour is the prevailing rate in the Northern District of Georgia for this type of case. The party submitting its fee amount bears the burden of "submitting satisfactory evidence to establish

both that the requested rate is in accord with the prevailing market rate and the hours are reasonable." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman v. Hous. Auth. Of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In support of his request, Claimant submits only his counsel's sworn statement, which states counsel's rate. Claimant does not supply additional necessary evidence, such as affidavits from other practitioners, to establish the prevailing rate. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299. "[I]n line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id*.

Because of this failure to present the required supportive evidence, Claimant has failed to meet his burden. See *Weissinger v. Murray*, 2009 WL 19711612, at *5 (N.D. Ga. July 2, 2009). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). In proving the reasonableness of the requested fee, the movant must produce satisfactory evidence, including but not limited to "proof of market rates in the relevant community (often in the form of affidavits from practitioners)." *See*

*Camacho*, 523 F.3d at 980. The relevant market for purposes of determining the reasonable hourly rate for attorney fees in the place where the case is filed. *United States v. Approximately $299,873.70 seized from a Bank of Am. Acct.*, 2020 WL 4808891, at *3 (S.D. Ala. Aug. 18, 2020), citing *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

Furthermore, evidence that an attorney has charged a certain hourly rate to clients in the past does not necessarily suggest that his requested rate is reasonable. *Turner v. Secretary of Air Force*, 944 F.2d 804, 808-809 (11th Cir. 1991) (holding that the prevailing party did not prove that $125 per hour was erroneous even though he would generally charge clients more than $125 per hour); *Mayson v. Pierce*, 806 F.2d 1556, 1557-58 (11th Cir. 1997) (in light of the record, $75 an hour was reasonable even though attorney normally charged more).

Claimant's counsel further justifies the $400 hour rate by asserting that "this matter involved extensive investigation and complex issues of forfeiture and search and seizure law, necessitating the application of significant attorney resources" and the "parties engaged in vigorous motions practice." (Doc. 34 at p. 13). For the reasons stated below, the United States disagrees. This is a simple civil forfeiture matter stemming from a single airport seizure and involves a small volume of discovery materials.

In support of his position, Claimant relies on cases involving commercial litigation, trademark and infringement, and discrimination actions, matters that that can be, when litigated, drastically different from civil forfeiture actions in terms of the duration of litigation, the complexity of the issues, and the nuances involved. Here, this action was litigated over the course of a year, involved neither novel questions nor significantly complex issues, and it was not a case of first impression - it was a straightforward forfeiture action involving an individual's encounter with law enforcement, a search of that individual's bag, which contained bundled cash, and a positive narcotics K-9 dog sniff. In summary, this case is not nearly as complex or resource intensive as the employment discrimination, civil rights, and commercial litigation actions, on which Claimant's counsel relies.

Furthermore, Claimant cites New York cases in support of his hourly rate. Despite the fact that both Atlanta and New York are large metropolitan areas, the legal market rates in Georgia and New York vastly differ. *See Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 (5th Cir. 1980) (noting that "[a]lthough involved in the same case, the fees awarded to lawyers from the […] New York City office would not necessarily be reasonable fees for […] a Macon, Georgia private practitioner." Further, Claimant has not submitted any evidence to show that the $400 per hour

rate is reasonable in Atlanta for a non-complex civil forfeiture case. *See Black v. M.G.A., Inc.*, 51 F. Supp. 2d 1315, 1321 (M.D. Ala. 1999) (finding that the relevant legal community for a case filed in the Southern District of Alabama was Montgomery, Alabama, and declining to consider fees outside the district).

Finally, pursuant to N.D. Ga. Local Rule 54.2(A)(2), "[w]ithin thirty (30) days (or such other period as the Court may prescribe) after filing the motion [for attorney fees], the movant shall file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation." Therefore, Claimant has until October 21, 2022, to supplement his request with additional evidence of the relevant rate in the Northern District of Georgia. If Claimant submits such additional support, the United States requests to be allowed the opportunity to respond at that time.

### c. Pre-Judgment Interest

Under Title 28, United States Code, Section 2465(C), pre-judgment interest is calculated (1) by determining the interest the United States was actually paid, through the investment of the currency in an interest-bearing account or instrument, from the date of the seizure or arrest of the currency; and (2) by determining the imputed interest amount, based on the 30-day Treasury Bill rate, "for any period during which no interest was paid" beginning 15 days after the

seizure or seizure adoption by a Federal law enforcement agency. 28 U.S.C. § 2465(C)(i) and (ii).

Here, the Defendant Currency was seized on March 26, 2021. Therefore, the calculation of any pre-judgment interest starts on April 10, 2021, 15 days after the seizure of the Defendant Currency, and ends on September 9, 2022, when the case was dismissed. However, on April 4, 2022, the parties *jointly* moved the Court to enlarge the discovery period for additional 120 days. The Court granted the parties' motion and extended the discovery deadline until August 3, 2022. [Docs. 19-20]. Therefore, the United States respectfully requests that the Court exclude the 120 days from the time period determining pre-judgment interest amount.

### d. Post-Interest Judgment

The Court should deny Claimant's request for post-judgment interest because Claimant refused to complete the required United States Marshal Service Automated Clearance House ("ACH") form, making it impossible for the United States to pay Claimant. Completing the ACH Form is required to ensure compliance with the provisions of the debt Collection Improvement Act of 1996 ("DCIA"), which specifies that "[e]xcept as otherwise provided in this subsection, a disbursing official … shall offset at least annually the amount of a payment which a payment certifying agency has certified to the disbursing official for

disbursement, by an amount equal to the amount of a claim which a creditor agency has certified to the Secretary of the Treasury pursuant to this subsection."
*31 U.S.C. § 3716(c)(1)(A).*

Furthermore, 31 C.F.R. § 285.5 explains which "[p]ayments made by the United States" are eligible for offset:

> Except as set forth in paragraph (e)(2) of this section, *all Federal payments* are eligible for offset under this section. Eligible Federal payments include, *but are not limited to,* Federal wage, salary, and retirement payments, vendor and expense reimbursement payments, certain benefit payments, travel advances and reimbursements, grants, fees, refunds, judgments (including those certified for payment pursuant to 31 U.S.C. 1304), tax refunds, *and other payments made by Federal agencies.*

*Id.* § 285.5(e)(1) (emphasis added).

In summary, 31 U.S.C. § 3716 requires the Government to withhold any Federal payment, including the return of seized property that is not forfeited, if the payee owes a debt to the federal Government or child support enforced by a State. See also *United States v. U.S. Dep't of Treasury*, 300 Fed. Appx. 860, 862 (11th Cir. 2008).

Claimant asserts that he is not required to complete the ACH form because the parties did not reach an agreement, instead the Government voluntarily dismissed the case. The case law does not support Claimant's position. See *United States v. Approximately $3,174 in United States Currency*, 928 F. Supp. 2d 1040, 1044-

14

45 (E.D. Wis. Mar. 8, 2013) (return of seized property when the Government unilaterally dismisses a forfeiture complaint is a "payment" that must be offset if the claimant owes a debt such as a delinquent student loan to the U.S.); *United States v. $37,000 in U.S. Currency*, 117 F.Supp.3d 1064 (S.D. Ind. 2015) (same); and *United States v. Bailey*, 775 F.3d 980, 981 (8th Cir. 2014) (property Government failed to forfeit in a criminal case may be held to offset deadbeat dad's outstanding child support debt).

Therefore, the Court should deny Claimant's request for post-judgment interest because Claimant refused to complete the required ACH form, making it impossible for the United States to pay Claimant.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court permit the United States to reserve its full response and objections to Claimant's award requests until after Claimant has complied with L.R. 54.2(A)(2) and reduce Claimant's pre- and post-judgment interest awards.

Respectfully submitted,

**RYAN K. BUCHANAN**
*United States Attorney*

/s/ Radka T. Nations
**RADKA T. NATIONS**
*Assistant United States Attorney*
Georgia Bar No. 618248
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6000

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13-point font, and that the United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

This 5th day of October, 2022.

/s/ Radka T. Nations
RADKA T. NATIONS
*Assistant United States Attorney*
